**TIMOTHY J. McILWAIN**

**ATTORNEY AT LAW, LLC**
89 River Street #1538
Hoboken, New Jersey 07030
Tel:  (877) 375-9599
Fax: (609) 450-7017
www.McIlwainLaw.com

Attorneys for Plaintiff, Michele Sharp

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| MICHELE SHARP,<br><br>    *Plaintiff,*<br><br>Vs.<br><br>KEAN UNIVERSITY, DAWOOD FARAHI, GLENN HEDDEN, CHRISTOPHER MORGAN, PHILIP CONNELLY, FARUQUE CHOWDURY and JOHN DOES 1 THROUGH 1550 inclusive, fictitious named defendants, jointly, severally, and in the alternative,<br><br>    *Defendant(s).* | CIVIL ACTION NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

The plaintiff, Michele Sharp, a resident of Somerset County, New Jersey, by way of Complaint against the Defendants, says:

**INTRODUCTION**

This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and

1985.  The Defendants reassigned Plaintiff from Head Coach of Kean University's Women's Basketball team to the East Campus Psychology department and then later to a small cubicle in the East Campus weight room in violation of her First Amendment right to free speech.  Additionally, this is a retaliation case that involves Plaintiff's overall remarks regarding the National Collegiate Athletic Association ("NCAA") and her opposing the improper removal of Emily Cristaldi from the women's basketball team without a fair hearing and before the NCAA completed its investigation, other conduct of public concern.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the case arises under the Constitution and laws of the United States.

Further, this Court has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(3), in that the action seeks redress for acts that deprive the plaintiff, under color of state law, of rights guaranteed to her by the Constitution of the United States, pursuant to 42 U.S.C. § 1983, 1985 and 1988.

Finally, this Court additionally has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that the action includes state law claims that are part of the same case or controversy as the federal claims.

Venue is proper in this Court under 28 U.S.C. § 1391(b), in that all of the events giving rise to plaintiff's claims occurred in the Northern District of New Jersey.

**PARTIES**

1. Plaintiff Michele Sharp, a resident of Somerset County.

2. Defendant Kean University, who at all times relevant herein, was an entity created and existing pursuant to the laws of the State of New Jersey with its main campus located at 1000 Morris Avenue, Union, New Jersey.

3. At all relevant times herein Defendant Dawood Farahi is an officer, employee, manager, supervisor, agent and/or representative of Kean University.

4. At all relevant times herein Defendant Glenn Hedden is an officer, employee, manager, supervisor, agent and/or representative of Kean University.

5. At all relevant times herein Defendant Christopher Morgan is an officer, employee, manager, supervisor, agent and/or representative of Kean University.

4. At all relevant times herein Defendant Philip Connelly is an officer, employee, manager, supervisor, agent and/or representative of Kean University

5. At all relevant times herein Defendant Faruque Chowdury is an officer, employee, manager, supervisor, agent and/or representative of Kean University.

6. At all relevant times herein Defendant John Does 1-1550 inclusive, were fictitious names for individuals, partnerships, joint ventures, corporations, limited liability corporations or other forms of legal entity, the identities of which are unknown at the present but who are liable to the plaintiff by reason of their participation in the acts referred to herein or who

aided and abetted the creation and maintenance of a discriminatory environment; among other conduct of public concern, or who authorized, ratified, condoned, acquiesced in or were willfully indifferent to the discriminatory conduct herein, the John Doe defendants specifically include all members of upper management who participated in or failed to remediate the discriminatory conduct and relieved the plaintiff from her duties as Head Women's Basketball Coach, among other conduct in direct violation of her First Amendment right to free speech and the Law Against Discrimination.

**FACTS**

7. Plaintiff Sharp had served as the Head Women's Basketball Coach at Kean University since August of 1998.

8. Plaintiff Sharp had enjoyed great success as the Head Women's Basketball coach.  By way of example, Plaintiff Sharp reached the Elite Eight three (3) times in her past four (4) years.

9. Kean University had the reputation of a top Division III athletic program, which attracted high school students to choose Kean University over other schools with better academic reputations.

10. During part of Plaintiff's coaching tenure, Defendant Kean's Athletic Director was Glenn Hedden, who was also the compliance officer of the National Collegiate Athletic Association (NCAA) rules and regulations, among other duties.

11. Upon realizing that Plaintiff had children and was not a homosexual, which is a stereotype in Women's Basket-

4

ball), Defendant Hedden said that if he had "known you were straight I would not have hired you."

12. Whether Defendant Hedden's comments were in a joking manner or not, the discrimination against women at Defendant Kean University would follow in later years with a gender based disparate impact women in Defendant Kean's athletic department.

13. Prior to 2011, upon in and belief, Defendant Hedden was notified by the NCAA that Kean was giving too many Dorsey Scholarships to athletes over the percentage allowable by the rules.  Essentially, Dorsey Scholarship provides for up to $12,000 per semester per student that maintain a grade point average (GPA) over 3.0 and 9 of the 11 Scholarships were awarded to female athletes as of 2011

14. Despite being warned by the NCAA and instead of simply just characterizing the Dorsey Scholarship as an academic scholarship rather than making an extra-curricular activity a factor, Defendant Hedden continued to violate the NCAA rules by allowing for a disproportionate number of the Dorsey Scholarships to go to athletes.

15. Upon information and belief, Defendant Hedden mistakenly believed that the Dorsey Scholarship was for minorities and not academically based.  Apparently, the Dorsey Scholarship had been changed years ago by Kean, but Defendant Hedden did not inform himself of the changes even though this was a part of his job duties.

16. Despite Defendant Hedden's mismanagement and/or cover-up, Defendant Kean continued to retain Defendant Hedden as Athletic Director since 1998.

17. On or around November 2010, upon information and belief, Defendant Hedden began supplying the NCAA information to entice an investigation into Plaintiff rather than correct Defendant Kean's conduct and overall compliance with the NCAA rules.

18. Despite being warned by the NCAA of the improper financial aid offers to athletes, Defendant Kean would conceal from the incoming female student athletes this fact as well as that if there was an investigation Defendant Kean would take away their scholarship or remove them from the sports team without a hearing and before any NCAA investigation was completed.

19. Upon information and belief, many of these female student athletes were offered scholarships from other competing colleges, which would to allow them to play their sport and receive financial assistance.

20. Defendant Kean allowed these female athletes to forego other scholarship opportunities knowing that if the NCAA eventually launched an investigation, Kean would pull a "bait and switch" with the student athletes of now of either playing the college sport they came to Kean to play or receive scholarship money for school. Both were no longer offered after the NCAA gave their notice of allegation.

21. On or around May 2011, Defendant Kean terminated Defendant Glenn Hedden.

22. On June 13, 2011, a month later, a disgruntled Defendant Hedden filed a lawsuit against Kean and continued to provide the NCAA information directly related to Defendant Hedden's negligence over the years such as improper financial aid offers to student athletes.

23. From June 13, 2011 to September 2011, Defendant Kean knew that an NCAA investigation was imminent and that Kean would take a draconian approach by removing players from teams and/or stripping them of the scholarship money before the NCAA investigation was complete.

24. Defendant Kean intentionally concealed from their student athletes how they would handle an NCAA investigation and maliciously withheld this information until the opportunity to transfer or obtain other financial aid was impossible.

25. On or about September 28, 2011, the NCAA sent a notice of allegations to Defendant Kean University primarily for off-season conduct not the offering of Dorsey Scholarships.  This was the second notice to address these violations Defendant had known about under Defendant Hedden.

26. On or about October 17, 2011(one day after the season started), Emily Cristaldi was removed from Kean University's women's basketball team.

27. Plaintiff Sharp was outspoken about the Defendant's NCAA infractions and voiced her concerns in opposing the removal of Emily Cristaldi as being improper without a fair hearing and before the NCAA completed its investigation.

7

28. Defendant Kean made Plaintiff school's scapegoat to take the blame for the bulk of the infarctions alleged in the NCAA's investigation rather than oppose the NCAA.

29. By way of an example of a part of the NCAA investigation that Defendant Kean did not oppose was when Plaintiff gave forty dollars ($40) from funds raised to two players so they could enter Universal studios and join the rest of the team.

30. Upon information and belief, there was a two-hour wait for the team to get into a Disney park on a trip that was prepaid. Rather than wait, the team went to Universal Studios. However, there was no last minute group discounts to allow the whole team to enter so two players were short $40.

31. Any reasonable coach would insist that the team experience an event together instead of excluding a few players. The NCAA's arbitrary rules required Plaintiff to give the entire team $40-$80 dollars or two dollars ($2) a player wherein the players would then need to pool the money and get it to the players that did not have a ticket or the money for the ticket.

32. Plaintiff told the players to pay the money back at another time, but one of the players was unhappy with the position she was playing and seized the chance to get her coach in trouble. This kind of trivial incident led to Plaintiff's termination and could have easily been explained by Defendant Kean instead of Kean being complicit with the NCAA rather than siding with their successful coach.

8

33. After Defendant Hedden reported Kean's violations to the NCAA, Plaintiff expressed to Defendant Kean that she wanted to oppose the NCAA charges/allegations.

34. In or around January 2011, Defendant Kean University's Director of Human Resources, Faruque Chowdury, called Plaintiff to his office in regards to her outspoken nature of the NCAA infractions and instructed her that she was making *too much noise and that she needed to tone it down*.

35. As a result of Plaintiff's expression to oppose the NCAA notice of allegations (i.e. investigation), she experienced an ongoing pattern of retaliation.

36. On or about January 19, 2012, Plaintiff was relieved of her duties as Head Women's Basketball Coach and re-assigned to the East Campus Recreational Facilities.

37. On or about October 23, 2013, Defendant Kean University moved Plaintiff's office to a small cubicle in the East Campus weight room.  The office had no privacy, consisted of extreme high temperatures, high noise level and was constructed of fake walls, among other things.  This action was a continuation of a almost two year long pattern of retaliation against Plaintiff associated with her being outspoken about the Defendant's NCAA infractions and for her remarks opposing the removal of Emily Cristaldi due to these infractions.

38. In 2011, upon information and belief, and by comparison, Jim Calhoun the male head basketball coach of the University of Connecticut was found to have failed to create an atmosphere of compliance by the NCAA when a

9

       scholarship recipient (Nate Miles) was given lodging, transportation and meals by a team manager.

39. The NCAA suspended Coach Calhoun for three (3) games stating the head coach bears the responsibility, but Coach Calhoun was permitted to retire in 2012.

40. On April 19, 2012, the NCAA found that Defendants improperly offered too many Dorsey Scholarships, but did not state that the proper remedy was to either remove Emily Cristadi from the basketball team or eliminate her scholarship.

41. Upon information and belief, NCAA committee never took away a scholarship from a student three (3) days before the season and without an investigation being completed.

42. Plaintiff is informed and believes that at all times herein mentioned, Defendants, and each of them, were the agents (ostensible and actual), servants, employees, and successors of their Co-Defendants, and in doing the things herein alleged, were acting within the course and scope of such agency and employment and with the permission, consent, authorization and ratification of the other Co-Defendants.  Additionally, each of the Defendants who made representations herein was making those representations in the course and scope of their employment and agency with and on behalf of each of the other Defendants.

43. As a result of the actions of the defendant, Plaintiff has suffered emotional trauma, damage to reputation and embarrassment due to disparate treatment by defendant Kean University.

**COUNT I**

**VIOLATION OF 42 U.S.C. § 1983-DELIBERATELY INDIFFERENT TO POLICIES, PRACTICES, CUSTOMS, TRAINING, AND SUPERVISION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS AND IN VIOLATION OF 42 U.S.C. § 1985**

44. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

45. 42 U.S.C. § 1983 provides that:

    "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress..."

46. Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

47. The Defendant to this claim at all times relevant hereto was acting under the color of state law.

48. Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a. the right to exercise her constitutional rights of free speech under the First Amendment without retaliation; and

b. the right to be free from discrimination by her employer under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1985.

49. Defendant knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

50. The acts or omissions of the Defendant, as described herein, deprived Ms. Sharp of her constitutional and statutory rights and caused her other damages.

51. The acts or omissions of Defendant as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

52. Defendant is not entitled to qualified immunity for the complained of conduct.

53. Defendant is, at all times relevant, policymakers and in that capacity established polices, procedures, customs, and/or practices for the same.

54. Defendant developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Ms. Sharp's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

55. Defendant has created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement re-

lated policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

56. In light of the duties and responsibilities of those employees that are expected to adhere to all NCAA by-laws, rules and regulations, the need for specialized education is so obvious, and the inadequacy of education is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized education is deliberately indifferent to those rights.

57. The deliberately indifferent education provided by Defendant resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

58. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

59. On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities, in amounts to be ascertained in trial.

60. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment inter-

est and costs as allowable by federal law.  There may also be special damages for lien interests.

61. Finally, Plaintiff seeks appropriate declaratory and injunctive relief including but not limited to reinstatement pursuant to 42 U.S.C. § 1983 to redress Defendant's above described ongoing deliberate indifference in polices, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the NCAA violations, which Defendant has no intention for voluntarily correcting despite obvious need and requests for such correction.

**COUNT II**

**VIOLATION OF 42 U.S.C. 1985 CONSPIRING TO DEPRIVE PLAINTIFF OF FIRST AMENDMENT AND FOURTEEN AMENDMENT RIGHTS**

6. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

7. Defendants formed a conspiracy and did through their conduct and actions conspire for a common design and/or purpose.  Their unlawful purpose and/or lawful purpose to be achieved by unlawful means consisted of retaliating against plaintiff for exercising her freedom of expression and denying Plaintiff equal protection guaranteed by the United States Constitution.  Upon information and belief, defendants engaged and conspired to injure and to harass plaintiff.

8. Plaintiff has suffered ordinary and special damages as a result of defendants' conspiracy.  In particular, plaintiff's reputation as a Women's Basketball Coach has been damaged.

9. By defendant's continuation of a almost two year long pattern of retaliation against Plaintiff that explicitly and implicitly discriminate on the basis of viewpoint, defendant, acting under color of state law, have deprived the Plaintiff of her right to freedom of speech and expression secured by the First Amendment to the Constitution of the United States, made applicable to the states through the Fourteenth Amendment.

10. Because of defendant's actions, the Plaintiff has suffered, and continues to suffer irreparable injury, which cannot be fully compensated by an award of money damages.

**COUNT III**

**RETALIATION IN VIOLATION OF THE NJLAD**

62. Plaintiff repeats and incorporates the preceding paragraphs as if set forth in their entirety.

63. In relieving plaintiff of her duties as Head Women's Basketball Coach, reassigning her to the East Campus Recreational Facilities, moving Plaintiff's office, among other things, Defendant has retaliated against Plaintiff for exercising her First Amendment right when she opposed the improper removal of Emily Cristaldi from the women's basketball team without a fair hearing, before the NCAA completed its investigation; among other conduct by Defendant.


64. In comparison to similarly situated male coaches, Plaintiff received a disparate impact, which is based on her gender and violate New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("NJLAD").

65. Defendant's retaliation against Plaintiff violates the provisions of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("NJLAD") because it represents a gender based decision.

66. As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has suffered, and will continue to suffer, loss in reputation, the loss of future compensation, the loss of significant wages and benefits, as well as substantial emotional distress damages.

## COUNT IV

## VIOLATION OF PUBLIC POLICY

67. Plaintiff repeats and incorporates the preceding paragraphs as if set forth in their entirety.

68. On or about October 23, 2013, Plaintiff suffered an adverse employment action when being moved for the third time to a purposefully humiliating office with unconscionable condition such as extreme heat and noise.

69. Plaintiff filed a tort notice pursuant to the laws of the State of New Jersey within ninety (90) days of the adverse employment action.

70. By reason of the aforementioned acts, plaintiff, as Kean University's Head Women's Basketball Coach, showed resistance to or the possibility of disclosure of defendant's illicit conduct.

71. Soon thereafter, Defendant began a continued almost two year long retaliation against Plaintiff.

72. The actions alleged above caused plaintiff to be constructively relieved from her job duties as Head Women's Basketball coach, office to be moved to a small cubicle in the East Campus weight room, among other things, this was in response for her overall remarks regarding the NCAA and opposing the improper removal of Emily Cristaldi from the women's basketball team without a fair hearing, before the NCAA completed its investigation; among other conduct by Defendant.

73. Therefore, plaintiff has suffered and continues to suffer losses in future earnings, among other things, in an amount to be established at trial. Additionally, defendants' conduct warrants the assessment of punitive damages.

**RESPONDEAT SUPERIOR**

74. At the time of the incident, Defendants Dawood Farahi, Glenn Hedden, Philip Connelly Christopher Morgan and Faruque Chowdury were employees, agents, and/or servants of Defendant Kean University. Defendants Dawood Farahi, Glenn Hedden, Philip Connelly, Christopher Morgan and Faruque Chowdury were acting within the course and scope of their employment with said Defendant at the time of the incident made the basis of this lawsuit. As such, said Defendant is responsible for the conduct of Defendants Dawood Farahi, Glenn Hedden, Philip Connelly, Christopher Morgan and Faruque Chowdury under the doctrine of **respondeat superior** due to the master-servant relationship, which existed

17

at the time of the incident made the basis of this lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests entry of judgment in their favor and against Defendant as follows:

A.  For compensatory damages in an amount to be determined at trial;

B.  For punitive damages against individual Defendants in an amount to be proven at trial;

C.  Injunctive relief reinstating Plaintiff Sharp as head coach of the women's basketball team and statement of retraction;

D.  For reasonable costs of this suit and attorneys' fees Pursuant to 42 U.S.C. 1988;

E.  Pre and Post-Judgment interest; and

F.  For such further relief as the Court may deem just, proper, and appropriate.


**TIMOTHY J. McILWAIN**
**ATTORNEY AT LAW, LLC**
Attorneys for Plaintiff,
Michele Sharp


BY:  /s/ Timothy J. McIlwain
     TIMOTHY J. MCILWAIN

Dated: January 17, 2014

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues.

**TIMOTHY J. McILWAIN**

**ATTORNEY AT LAW, LLC**
Attorneys for Plaintiff,
Michele Sharp


BY:  /s/ Timothy J. McIlwain
     TIMOTHY J. MCILWAIN

Dated:  January 17, 2014