NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELE SHARP,**<br><br>      **Plaintiff,**<br><br>   v.<br><br>**KEAN UNIVERSITY et al.,**<br><br>      **Defendants.** | Civ. No. 2:14-423 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Michelle Sharp – former coach of the Kean University Women's Basketball Team – brings this action against Kean University ("Kean") and a number of related defendants, seeking redress under 42 U.S.C. §§ 1983 and 1985, the New Jersey Law Against Discrimination, and the common law. Plaintiff alleges that she was unlawfully relieved her of her coaching duties after she objected to the manner in which Kean University handled an NCAA investigation. This matter comes before the Court on two motions: a motion to dismiss from Kean University, Dawood Farahi, Christopher Morgan, Philip Connelly, and Faruque Chowdhury (collectively, "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and a cross-motion for leave to amend the Complaint pursuant to Rule 15(a). For the reasons set forth below, both motions are **GRANTED**.

I.     BACKGROUND

Plaintiff Michelle Sharp is the former coach of the Kean University Women's Basketball Team, which competes in the National Collegiate Athletic Association's ("NCAA") Division III. (Complt. at ¶ 7-9). Defendant Kean University ("Kean") is a public university with campuses located in Union and Hillside, New Jersey. *Id*. at ¶ 2. Defendants Farahi, Morgan, Connelly, and Chowdhury ("the University Defendants") are Kean employees. Plaintiff began coaching the Kean Women's Basketball Team in 1998,

and achieved some success in NCAA Tournament play. *Id*. at ¶ 8. In 2011, however, the NCAA notified Kean that the University was awarding more Dorsey Scholarships than what was allowed under NCAA rules. (Complt. at ¶ 13). Sharp alleges that Kean did not inform incoming female student athletes of this fact or the possibility that their scholarships or spots on the basketball team may be revoked if the NCAA initiated a formal investigation. *Id*. at ¶ 18. According to Sharp, the NCAA did launch an investigation into Kean in September 2011. Sharp further alleges that shortly after the NCAA launched its investigation, Kean removed student-athlete Emily Cristaldi from the Women's Basketball Team roster. *Id*. at ¶ 26.

Sharp clashed with other University personnel over how the University should handle the investigation. Specifically, Sharp informed Defendants that she did not believe that Kean afforded Cristaldi due process rights before it removed her from the team. *Id*. at ¶ 37. And while Sharp was of the view that Kean should oppose the NCAA's allegations, the University appeared to disagree with her position. *Id*. at ¶ 33. Sharp alleges that after expressing her views to University personnel, Defendant Faruque Chowdhury – Kean's Director of Human Resources – called Sharp to his office and "instructed her that she was making too much noise and that she needed to tone it down." *Id*. at ¶ 34.[1] According to the Complaint, Kean then retaliated against Sharp by relieving her of her duties as Head Women's Basketball Coach, re-assigning her to the East Campus Recreational Facilities, and later relocating her to an inferior office space. *Id*. at ¶ 36-37. Alleging that this misconduct has caused her injury, Sharp brings claims under 42 U.S.C. §§ 1983 and 1985, the New Jersey Law Against Discrimination ("NJLAD"), and the common law. *Id*. at ¶¶ 44-77. The University Defendants now move to dismiss for failure to state a claim under Rules 12(b)(1) and 12(b)(6).

## II.     RULE 12(b)(1) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). There are two types of challenges to subject-matter jurisdiction: (1) facial attacks, which challenge the allegations of the complaint on their face; and (2) factual attacks, which challenge the existence of subject-matter jurisdiction, quite apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a factual attack, like the one in this case, the court may consider evidence outside the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997). The plaintiff bears the burden of proving that jurisdiction exists. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3rd Cir. 2000).

---

[1] Plaintiff makes no specific factual allegations with respect to any other University Defendant.

In the Rule 12(b)(1) portion of its motion, Kean asserts that all actions against it must be dismissed because they are barred by the Eleventh Amendment. The doctrine of sovereign immunity – which derives from the Eleventh Amendment – operates as a jurisdictional bar that strips federal courts of subject matter jurisdiction over lawsuits against a state. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). This jurisdictional bar extends to "arms" of the state, including some state agencies. *Id*. Moreover, causes of action under §§ 1983 and 1985 do not operate as waivers to state sovereign immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989). Sovereign immunity also bars causes of action against a state under the NJLAD or common law. *See e.g., Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-41 (2002).

The issue here is whether Kean is an arm of the state under the doctrine of sovereign immunity. If it is, Sharp cannot maintain her claims against it. The Third Circuit has developed a three-part inquiry for determining whether an entity is an arm of the state and thus entitled to sovereign immunity: (1) whether the money that would pay the judgment would come from the state; (2) the status of the entity under state law; and (3) the degree of autonomy enjoyed by the entity. *Fitchik v. New Jersey Transit Rail Operations*, 873 F.2d 655, 659 (1989). No single factor is automatically entitled to greater weight; rather, the amount of weight ascribed to each factor will depend on the facts of the case. *See Cooper v. Southeastern PA Transp. Authority*, 548 F.3d 296, 302 (3d Cir. 2008); *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 547 (3d Cir. 2007) ("Whether a public university is entitled to Eleventh Amendment immunity is a fact-intensive review that calls for individualized determinations.")

The first factor (whether a money judgment would come from State coffers) unequivocally weighs against finding sovereign immunity. Knowing full well that New Jersey would not be required to pay a judgment should Sharp prevail on her claims, Kean instead argues that "state funds will inevitably be paid to satisfy judgments against [Kean]" because Kean relies on the State for a significant portion of its funding. (MTD at 14). Other courts have routinely rejected similar arguments and have stressed that the relevant inquiry is whether the State has a "legal obligation" to satisfy a judgment. *See e.g., Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 51 (1994); *Bowers v. NCAA,* 475 F.3d 524, 546 (3d Cir. 2007). Because New Jersey would not be legally obligated to pay a judgment against Kean, the first factor strongly weighs against finding sovereign immunity.

The second factor (the status of Kean under state law), however, slightly supports Kean's position. Under the second *Fitchik* factor, a court must look at "how state law treats the entity generally; whether the entity can sue or be sued in its own right, whether the entity is separately incorporated, and whether the entity is immune from state taxation." *Bowers*, 475 F.3d at 547. Here, Kean cannot sue or be sued in its own right and is immune from state taxation. (MTD at 11). It also possesses other characteristics that weigh toward

finding sovereign immunity under the second *Fitchik* prong, including the fact that it is subject to the New Jersey Administrative Procedure Act. *See Nannay v. Rowan College*, 101 F.Supp.2d 272, 284 (D.N.J. 2000). That said, other elements of Kean's status cuts in the other direction; it retains the right to independently incorporate, N.J.S.A. § 18A:64-6(a), and is statutorily bestowed with a degree of autonomy not enjoyed by other state agencies. *See* N.J.S.A.18A:3B-27; *Bostanci v. New Jersey City Univ.*, No. 08-4339, 2010 WL 4961621, *2-3 (D.N.J. Dec. 1, 2010). Taken as a whole, however, the scale tips slightly in favor of Kean with respect to the second *Fitchik* factor.

The third factor (the degree of autonomy enjoyed by Kean) cuts against finding sovereign immunity, and taken together with the two other *Fitchik* factors, supports the conclusion that Kean has not made a sufficient showing entitling it to sovereign immunity. As The Honorable Stanley Chesler noted in two opinions holding that State universities were not entitled to sovereign immunity, the Higher Education Restructuring Act of 1994 has vastly increased the power of state college governing boards, thereby lending to more university autonomy. *Ventura v. Montclair State Univ.*, No. 08-5792, 2011 WL 6339656, *6 (D.N.J. Dec. 19, 2011); *Bostanci,* No. 08-4339, 2010 WL 4961621 at *3. Kean asks this Court to disregard those cases because they were decided before Governor Chris Christie executed The 2011 Reorganization Plan ("the Plan"), which abolished the New Jersey Commission on Higher Education ("the Commission") and transferred the Commission's powers to the Secretary of Education. While Kean contends that this action severely diminishes Kean's autonomy, close inspection of the Plan shows that it did not usurp any power once held by any particular state university; rather, it only transferred the powers of the Commission – of which 14 of its 16 members were appointed by the Governor– to the Secretary of Education. 43 N.J.R. 1625 (2011). In other words, while the Plan may have diminished the power of the Commission, it did not revoke any powers that Kean once enjoyed. More importantly, The Plan has no bearing on other components of the Higher Education Restructuring Act of 1994 that have undoubtedly conferred a great deal of autonomy on State universities. *See e.g.*, N.J.S.A. 18A:64-6 ("The board of trustees of a State college shall have general supervision over and shall be vested with the conduct of the college"); N.J.S.A. 18A:64-7 ("The board of trustees of a State college…shall have and exercise the powers, rights and privileges that are incident to the proper government, conduct and management of the college….")

On balance, the Court finds that Kean has not made a sufficient showing to support a finding of sovereign immunity at the motion to dismiss stage. Sharp's Complaint is therefore not subject to a Rule 12(b)(1) dismissal. However, the Court may be willing to reconsider the issue at the summary judgment stage following appropriate discovery. *See Endl v. New Jersey,* 5 F.Supp. 3d 689, 700 (D.N.J. 2014).

### III.  RULE 12(b)(6) MOTION TO DISMISS

Having found that the Court retains subject-matter jurisdiction over this case, it now must consider whether Sharp has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

#### A.  §§ 1983 and 1985 Claims Against Kean

Kean argues that Sharp's § 1983 claims against the University must be dismissed because she has failed to allege a constitutional deprivation resulting from a Kean policy or custom. Even when a governmental entity is not protected by the Eleventh Amendment, it can be held liable in a § 1983 action only if the plaintiff shows that one of its policies or customs caused the alleged constitutional deprivation. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A government policy or custom can be established in two ways: (1) a decision-maker with final authority to set a policy with respect to the action exercises such authority; or (2) certain practices are so well-settled as to "virtually constitute law" even if there is no official policy. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Here, Sharp's bald assertion that Kean "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens" is completely devoid of any factual support. (Complt. at ¶ 54). Therefore the §§ 1983 and 1985 claims against Kean are **DISMISSED WITHOUT PREJUDICE**.[2]

#### B.  § 1983: First Amendment Claim Against the University Defendants in their Individual Capacities

In order to establish a First Amendment claim under § 1983, the plaintiff must sufficiently plead that (1) her conduct was protected by the First Amendment; (2) she was retaliated against; and (3) the protected conduct was a substantial or motivating factor in

---

[2] Because a suit against an individual in his or her official capacity is in reality a suit against the public entity for which he or she works, Sharp's failure to state a claim against Kean necessitates a finding that she has also failed to state a claim against the University Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [,]" since "[i]t is not a suit against the official personally, for the real party in interest is the entity.")

the alleged retaliation. *Bradshaw v. Twp. of Middletown*, 145 Fed.Appx. 766-67 (3d Cir. 2005). Even assuming that Sharp's speech is protected, the Court concludes that because Sharp has failed to adequately plead that she suffered retaliation at the hands of the University Defendants, her First Amendment claim against those defendants must be dismissed. "[A] claim of First Amendment retaliation requires personal involvement in the alleged retaliatory conduct so that there is a causal connection." *Smith v. Dep't of General Services of PA.*, 181 Fed.Appx. 327, 331 (3d Cir. 2006) (citing *Brennan v. Norton*, 350 F.3d 399, 414, 419 (3d Cir. 2003)). While Sharp alleges that she suffered retaliation when was relieved of her coaching duties and reassigned to a less desirable office location, she has plead no facts demonstrating that any of the University Defendants had a role in those actions. Moreover, Sharp has provided little in the way of showing what she said to each University Defendant before suffering the alleged retaliation. Therefore, Sharp's First Amendment claim against the University Defendants is **DISMISSED WITHOUT PREJUDICE.**

### C. §1983: Discrimination Claim Against the University Defendants in their Individual Capacities

The Court will grant the motion to dismiss with respect to Sharp's discrimination claim under § 1983 against the University Defendants. In order to state a claim for unlawful discrimination under § 1983, a plaintiff must prove the existence of purposeful discrimination, *i.e.*, a plaintiff must demonstrate that he or she "received different treatment from that received by other individuals similarly situated." *Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 150 (3d Cir. 2005). Sharp has failed to make such a showing here with respect to the University Defendants. Instead, she vaguely asserts that the University Defendants violated her right to be free from gender-based discrimination.[3] (Complt. at ¶¶ 12, 48). Because these conclusory assertions are insufficient to defeat a motion to dismiss, *see, e.g., In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997), Sharp's discrimination claim is **DISMISSED WITHOUT PREJUDICE.**

### D. §1985 Claim Against the University Defendants in their Individual Capacities

In order to state a conspiracy claim under 42. U.S.C. § 1985, a plaintiff must adequately plead an underlying constitutional injury. *See e.g., Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.2d 1564, 1570 (3d Cir. 1995). Because Sharp has failed

---

[3] Plaintiff alleges that another Defendant – Glenn Hedden – made sexist remarks in her presence. (Complt. at ¶ 11). Because Defendant Hedden has not presently moved for dismissal of Plaintiff's Complaint, this Opinion solely addresses the allegations against Kean and the University Defendants.

to allege a cognizable constitutional claim against the University Defendants under 42 U.S.C. § 1983, Sharp's § 1985 claim is **DISMISSED WITHOUT PREJUDICE**.

### E.  NJLAD Claim

Sharp has also asserted that Defendants violated the New Jersey Law Against Discrimination ("NJLAD"). An NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination on the basis of race, color, religion, sex, or national origin. N.J.S.A. § 10:5-12(d).  As plead in the Complaint, the substance of Sharp's NJLAD claim is unclear; however, her opposition brief indicates that she believes Defendants retaliated against her for complaining about discrimination in the workplace. (Plf's Opp. at 7). While the NJLAD provides that an employee engages in protected activity if he or she raises concerns about workplace discrimination, N.J.S.A. § 10:5-12(d), a thorough review of the Complaint reveals no facts demonstrating that Sharp complained of discrimination to the University or its employees.  Instead, the Complaint merely states that Sharp expressed her views that the University was not affording its female athletes due process in connection with the revocation of scholarships and roster spots.  Because Sharp does not allege that she criticized Kean or its employees for treating similarly situated female athletes differently than their male counterparts, her NJLAD claim is **DISMISSED WITHOUT PREJUDUCE.**

### F.  Public Policy Claim

Sharp also alleges that Defendants caused her to suffer an "adverse employment action" in violation of public policy. (Complt. at ¶ 68). In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980), the New Jersey Supreme Court held that an employee may maintain a cause of action where he or she is discharged for reasons contrary to a clear mandate of public policy.  It is well-settled, however, that a *Pierce* claim cannot withstand a motion to dismiss where it seeks to vindicate the same rights and interests as an NJLAD claim.  *See, e.g., Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 249 (D.N.J. 1996) ("a common law claim for wrongful termination is not viable insofar as it seeks the same remedy available under the NJLAD").  According to the Complaint, Sharp's public policy claim is premised on the same factual allegations supporting her NJLAD claim. (*See id*. at ¶ 70).  The Court is therefore presently unable to pinpoint any interests Sharp seeks to vindicate in her public policy claim that are not already covered in the NJLAD cause of action.  Consequently, Sharp's public policy claim is **DISMISSED WITHOUT PREJUDICE**.[4]

---

[4] Because the Court finds that Plaintiff cannot plead a public policy claim that seeks to vindicate rights protected by the NJLAD, it does not reach the issue of whether Kean's decision to relieve Sharp from her coaching duties amounted to a constructive discharge.

### G. Respondeat Superior Against Kean

Sharp also seeks to hold Kean liable for the actions of its employees under a theory of respondeat superior. Because the Court has dismissed the underlying claims against the University Defendants, Sharp's respondeat superior claim against Kean is also **DISMISSED WITHOUT PREJUDICE.** *See, e.g., Metz v. United Counties Bancorp*, 61 F.Supp.2d 364, 385 (D.N.J. 1999) ("because the underlying claim…has been dismissed, the claim…for respondeat superior liability…is also dismissed").

### IV. CROSS MOTION TO AMEND

Sharp also cross moves for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a). (Plf's Opp. at 2-3). In civil rights cases, "leave to amend must be granted sua sponte before dismissing" the complaint. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). That rule applies with equal force in cases like this where the plaintiff has requested leave to amend. The Court therefore grants Sharp **30 DAYS LEAVE TO AMEND** her Complaint.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is **GRANTED** and Sharp's motion for leave to amend is **GRANTED**. Sharp shall have **30 DAYS LEAVE TO AMEND** her Complaint. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 8th, 2014**

---

*Cf. Bimbo v. Burdette Tomlin Memorial Hosp.*, 644 F.Supp. 1033, 1038 (D.N.J. 1986).