UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELE SHARP,** <br><br> **Plaintiff,** <br><br> v. <br><br> **KEAN UNIVERSITY et al.,** <br><br> **Defendants.** | Civ. No. 2:14-423 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Michelle Sharp accuses Kean University ("Kean") and some of its current and former employees[1] (collectively "the Kean Defendants"), as well as the National Collegiate Athletic Association ("NCAA"), of sabotaging her reputation and career in violation of state and federal law. She also brings a legal malpractice claim against the law firm of Jackson Lewis, P.C. ("Jackson Lewis"). This matter comes before the Court on (1) a motion to dismiss filed by the NCAA and NCAA investigator Ameen Najjar (collectively, "the NCAA Defendants"), (2) a motion to dismiss filed by the Kean Defendants, and (3) Sharp's motion to dismiss a counterclaim filed by Jackson Lewis. For the reasons stated below, the motions to dismiss filed by the NCAA Defendants and the Kean Defendants will be **GRANTED**. Moreover, the Court will decline to exercise supplemental jurisdiction over Sharp's legal malpractice claim against Jackson Lewis and Jackson Lewis' counterclaim for unpaid legal fees against Sharp.

**I.     BACKGROUND**

Unless otherwise noted, the following facts are alleged in Sharp's amended complaint.

---

[1] The current or former Kean employees named in the amended complaint are Dawood Farahi, Glenn Hedden, Christopher Morgan, Philip Connelly, Faruque Chowdury, Isali Alsina, Karyn Pinter, and Jack McKiernan. With the exception of Hedden, all of these individuals have moved to dismiss the amended complaint.

In 1998, Sharp began her tenure as the coach of the Kean University women's basketball team. *Am. Complt.* at ¶ 22. Sharp's teams experienced considerable success on the court as Sharp turned a perennial underperformer into a championship contender. *Id*. at ¶¶ 26-27. Off the court, however, Sharp clashed with other Kean personnel, particularly former Kean athletic director Glenn Hedden. *See, e.g., id*. at ¶ 33. The amended complaint particularly focuses on a "Travelearn" program in which Sharp planned to organize a trip to Spain for her players. According to Sharp, Hedden sought to sabotage her Traverlearn efforts, while taking other actions to besmirch Sharp's reputation. *See id* at ¶¶ 37-38, 48, 52-53.

Sharp was later entangled in an NCAA investigation concerning Kean's athletic program. Specifically, the NCAA investigated whether some members of Sharp's team were ineligible for competition under NCAA regulations. According to the amended complaint, NCAA investigator Ameen Najjar suggested to Hedden that Sharp should allow the students in question to play. After Hedden relayed the message to Sharp, she agreed to dress those students for competition. However, Najjar and Hedden later launched a "'gotcha' investigation" and a "complete setup" in which they sought to discipline Sharp simply for following their instructions. *See id*. at ¶¶ 39-40. Sharp similarly claims that Najjar and Hedden "conspired to frame" her in an investigation into Travelearn. *Id*. at ¶ 57.

With the exception of Hedden, Kean personnel supported Sharp in the face of the NCAA's allegations. However, those individuals later withdrew their support in an effort to avoid further scrutiny from the NCAA. *Id*. at ¶¶ 53-57. In the spring of 2011, the NCAA brought formal charges against Kean, which included allegations of Sharp engaging in misconduct. In September 2011, Kean concurred with the findings of the NCAA's investigation and agreed to incorporate certain corrective measures proposed by Hedden. *Id*. at ¶ 62. That same month, Sharp and her attorney, Gregg Clifton of Jackson Lewis, appeared before the NCAA and presented "evidence around her innocence." *Id*. at ¶ 63. However, the NCAA published a report concluding that Kean and Sharp had violated NCAA regulations. In response, Kean stripped Sharp of her coaching duties and demoted her to a secondary role at the university. These actions have considerably damaged Sharp's employment prospects and reputation. *See id*. at ¶¶ 64-65.

On January 21, 2014, Sharp filed her initial complaint, which included claims against only Kean and its employees. On December 8, 2014, this Court dismissed Sharp's complaint without prejudice and granted her leave to amend. Sharp then filed her amended complaint, which for the first time included claims against the NCAA, Najjar, Jackson Lewis, Gregg Clifton,[2] and a number of other individuals affiliated with Kean University. In response, the NCAA Defendants and the Kean Defendants filed motions to dismiss,

---

[2] For convenience, the Court will refer to Jackson Lewis and Gregg Clifton collectively as "Jackson Lewis."

while Jackson Lewis filed a counterclaim. Sharp then moved to dismiss the counterclaim against her. Now that the dust has settled, there are three motions presently before the Court: (1) a motion to dismiss filed by the NCAA Defendants, (2) a motion to dismiss filed by the Kean Defendants, and (3) Sharp's motion to dismiss Jackson Lewis' counterclaim.

## II.     DEFENDANTS' MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### A. <u>NCAA Defendants</u>

For the reasons stated below, Sharp has failed to state a claim against the NCAA Defendants.

#### i.    *42 U.S.C. §§ 1983, 1985 Claims*

Sharp's 42 U.S.C. § 1983 claim fails because the NCAA Defendants did not act under the color of state law. In order to state a claim under section 1983, the NCAA Defendants must have violated Sharp's rights while acting under the color of state law. *See, e.g., Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995). A private entity like the NCAA acts under the color state law only where "the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; where "the private party has acted with the help of or in concert with state officials"; or where "the State has so far insinuated itself into a position of interdependence with the acting party that it must

be recognized as a joint participant in the challenged activity." *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F.Supp. 436, 441-442 (E.D.Pa. 1996) (citations and quotations omitted). In *National Collegiate Association v. Tarkanian*, the Supreme Court held that private conduct of the NCAA is not transformed into state action simply because a public university disciplines an employee in direct response to an NCAA investigation. 488 U.S. 179 (1988). The Court emphasized that in such a scenario, it is ultimately up to the public university as to whether it should discipline the employee, even though institutional pressure from the NCAA may influence the university's decision. In other words, the state action of the university cannot be imputed to the NCAA. *Id.* at 195-96. Here, it was Kean, not the NCAA, who stripped Sharp of her coaching duties. Indeed, it appears that the NCAA does not even possess the authority to take disciplinary action against Sharp; rather, its enforcement authority extends only to the university itself. Because the NCAA did not act under the color of state law, Sharp's section 1983 claim against the NCAA Defendants must be **DISMISSED WITH PREJUDICE**. Moreover, because Sharp's section 1985 claim is premised on a violation of the equal protection clause, it too is subject to the state action requirement. *United Broth. Of Carpenters and Joinders of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 831-33 (1983). Consequently, the section 1985 claim against the NCAA Defendants must also be **DISMISSED WITH PREJUDICE**.

   *ii.*   *Title IX Claims*

The Title IX Claims against the NCAA Defendants also fail. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance…." 20 U.S.C. § 1681(a). First, individuals are not subject to Title IX claims, which means the Title IX claim against Najjar must be **DISMISSED WITH PREJUDICE**. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals").

Sharp's Title IX claim against the NCAA fares no better as it suffers from numerous pleading deficiencies. Specifically, there is no allegation that the NCAA has received Federal financial assistance such that it would be subject to suit under Title IX. *Cf. Smith v. National Collegiate Athletic Association*, 266 F.3d 152, 162 (3d Cir.2001) (NCAA may be subject to Title IX liability where it assumes true control over federally-funded programs). Additionally, Sharp has plead absolutely no facts even hinting at the existence of gender-based discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005) (Title IX allows for private lawsuits where there is intentional gender-based discrimination). Consequently, Sharp's Title IX claim against the NCAA is **DISMISSED WITH PREJUDICE**. *See, e.g., Toll v. American Airlines, Inc.*, 166 Fed.Appx. 633, 636-37 (affirming dismissal with prejudice where plaintiff failed to plead any facts supporting discrimination claim).

### *iii.* *RICO Claims*

Sharp's amended complaint is also deficient in alleging that the NCAA Defendants violated state and federal RICO statutes. To state a claim under the federal civil RICO statute, Sharp must sufficiently plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See* 18 U.S.C. § 1962(c); *Sedima, S.P.R.L, v. Imrex Company, Inc.*, 473 U.S. 479, 496 (1985). New Jersey's civil RICO statute is substantially similar, as it contains the following elements: "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated though a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *See* N.J.S.A. 2C:41-2(c); *Galicki v. New Jersey,* No. 14-169, 2015 WL 3970297, *7 (D.N.J. June 29, 2015) (citations omitted).

Sharp's RICO claims against the NCAA Defendants do not meet those requirements. For example, Sharp does not adequately plead the existence of an enterprise. A RICO enterprise exists only where (1) there is "an ongoing organization, formal or informal"; (2) "the various associates [of the enterprise] function as a continuing unit"; and (3) the enterprise exists "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Moreover, the existence of an enterprise requires that there be "some sort of framework for making or carrying out decisions." *U.S. v. Irizarry*, 341 F.3d 273, 286 (3d Cir.2003) (quoting *United States v. Riccobene*, 709 F.3d 214, 222 (3d Cir.1983)). The amended complaint, which vaguely asserts that Najjar and Hedden conspired to ruin Sharp's career, falls woefully short of sufficiently alleging the above-described elements. Moreover, Sharp does not sufficiently allege a pattern of racketeering activity. A pattern of racketeering activity will exist only where there are at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. at 496 n. 14. Here, Sharp alleges in conclusory fashion that the NCAA Defendants engaged in "mail fraud." Bare bones pleading of that sort does not come close to complying with the heightened pleading requirements applicable to fraud allegations under Fed.R.Civ.P. 9(b). *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 673 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989). Sharp's RICO claims against the NCAA Defendants are therefore **DISMISSED WITH PREJUDICE**. *See, e.g., Allstate New Jersey Ins. Co. v. Summit Pharmacy, Inc.*, Civil Action No. 13-5809, 2014 WL 1767528, *9-*12 (D.N.J. May 2, 2014) (dismissing RICO claims with prejudice where plaintiff failed to allege predicate acts or the existence of an enterprise).

B. <u>Kean University's Motion to Dismiss</u>

Like her claims against the NCAA Defendants, Sharp's claims against the Kean Defendants are subject to dismissal.[3]

i. *42 U.S.C. §§ 1983, 1985 Claims*

Sharp fails to state a claim under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against Kean. Sharp can only state a 42 U.S.C. §1983 claim against Kean if she can demonstrate that one of Kean's policies or customs caused the alleged constitutional deprivation. *Sharp*, 2014 WL 6908775, *4 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). The amended complaint makes no such showing. Instead, it states in conclusory terms that there was a policy in place that "constituted disparate treatment of the female coach and had a disparate impact on the female coach." *See Am. Complt.* at ¶ 70. Conclusory allegations of that sort are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Moreover, despite repeated attempts to plead the existence of discriminatory policies or customs, Sharp has come nowhere close to making out a § 1983 claim against Kean. Therefore, the 42 U.S.C. § 1983 and § 1985 claims against Kean are **DISMISSED WITH PREJUDICE**. *See, e.g., Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.2d 1564, 1570 (3d Cir. 1995) (§ 1985 claim can exist only where there is an underlying constitutional injury).

The 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims against current and former Kean employees are also subject to dismissal. Sharp appears to argue that she suffered unlawful discrimination based on her gender. In order to make out such a claim, Sharp "must prove the existence of purposeful discrimination, *i.e.*, [she] must demonstrate that she 'received different treatment from that received by other individuals similarly situated.'" *Sharp*, 2014 WL 6908775, *5 (citing *Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 150 (3d Cir. 2004)). Sharp attempts to meet this requirement by alleging that a male coach at the University of Miami received less punishment for more culpable conduct. *Am. Complt.* at ¶ 64. However, Kean had no role in disciplining the University of Miami coach, and therefore Sharp has failed to meet the "similarly situated" requirement of a discrimination claim under 42 U.S.C. § 1983. Consequently, the 1983 and 1985 claims are **DISMISSED WITH PREJUDICE**. *See, e.g., Wilson v. Piazza*, No. 10-3356, 2011 WL 765806, *5 n.2 (D.N.J. Feb. 22, 2011) (dismissing § 1983 claim with prejudice where plaintiff failed to plead that he was treated different from other persons similarly situated).

---

[3] For a second time, Kean raises a sovereign immunity defense. While the Court previously rejected Kean's sovereign immunity defense, it expressed its willingness to reconsider the issue after appropriate discovery took place. *Sharp*, 2014 WL 6908775, *4. Because there has been no discovery to this date, the Court will not address Kean's sovereign immunity defense.

*ii. Title IX Claims*

As explained in the section regarding the NCAA Defendants' motion to dismiss, individuals cannot be subject to Title IX claims. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"). Therefore, to the extent Sharp asserts Title IX claims against any current or former Kean University official, those claims will be **DISMISSED WITH PREJUDICE**. Moreover, because Sharp has failed to, among other things, adequately plead discrimination on the basis of sex, her Title IX claim against Kean is **DISMISSED WITH PREJUDICE**. *See Jackson*, 544 U.S. at 173-74; *Toll*, 166 Fed.Appx. at 636-37.

*iii. NJLAD Claims*

Sharp's NJLAD claims are also subject to dismissal. "An NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination on the basis of race, color, religion, sex, or national origin." *Sharp*, 2014 WL 6908775, *5 (citing N.J.S.A. § 10:5-12(d)). In support of her NJLAD claim, Sharp refers to a verbal complaint she made to her then-husband in which she claimed to be "exhausted by the air of negativity created by Hedden." *Am. Complt*. at ¶ 29. Nothing in that statement indicates that Sharp opposed conduct that the NJLAD prohibits. Moreover, Sharp has failed to remotely suggest that she opposed the type of discrimination contemplated by the NJLAD. Therefore, her NJLAD claim is **DISMISSED WITH PREJUDICE**.[4]

*iv. RICO Claims*

Sharp has failed to adequately plead RICO claims against the Kean Defendants. First, Sharp's vague allegations that the Kean Defendants made false statements to the NCAA and the New Jersey Superior Court fall short of the heightened pleadings requirements for fraud under Fed. R. Civ. P. 9(b). *Saporito*, 843 F.2d at 673. Moreover, Sharp fails to

---

[4] It also appears that Sharp's claims under Title IX, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the NJLAD are time-barred. Each of these causes of action carries a two-year statute of limitations. *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) (section 1983 actions in New Jersey carry a two-year statute of limitations); *Montells v. Haynes*, 133 N.J. 282, 292 (1993) (two-year statute of limitations for NJLAD claims); *Bougher v. Univ. Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989) (two-year statute of limitations for Title IX claims). As plead in the amended complaint, Sharp's latest injury occurred in 2011, which means that she was required to file her complaint before 2014. However, Sharp initiated this action on January 21, 2014, which indicates that her claims are time-barred. Sharp contends that her claims are timely because she has suffered a "continuing tort," but she does not plead any facts supporting such a theory.

7

adequately allege who was part of the enterprise, *Turkette*, 452 U.S. at 583, nor does she describe the enterprise's framework for making or carrying out decisions. *Irizarry*, 341 F.3d at 286. Consequently, Sharp's RICO claims against the Kean Defendants are **DISMISSED WITH PREJUDICE**.[5] *Allstate New Jersey Ins. Co. v. Summit Pharmacy, Inc.*, 2014 WL 1767528 at *9-*12.

### III.   SHARP'S LEGAL MALPRACTICE CLAIM AND JACKSON LEWIS' COUNTERCLAIM

Although not raised by the parties, the Court will refrain from retaining subject-matter jurisdiction over Sharp's malpractice claim against Jackson Lewis and Jackson Lewis' counterclaim against Sharp. 28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over a claim where:

1. the claim raises a novel or complex issue of State law,
2. the claim substantially predominates the claim or claims over which the district court has original jurisdiction
3. the district court has dismissed all claims over which it has original jurisdiction, or
4. in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). Moreover, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Now that the Court has dismissed all of Sharp's federal claims, all that remains from her complaint is her state law legal malpractice claim against Jackson Lewis.[6]

---

[5] Sharp also failed properly serve Alsina, Pinter, and McKiernan with the amended complaint. Fed. R. Civ. P. 12(b)(5) authorizes district court to dismiss a case if service of process was insufficient. The party responsible for effecting service has the burden of demonstrating that service was proper. *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). Sharp did not properly serve these individuals within 120 days as required by Fed. R. Civ. P. 4(m). At most, Sharp served some of these Defendants by certified mail after the 120 day period expired. Under the circumstances of this case, such service was insufficient under Rule 4. *See, e.g., Amadi v. FCI Fort Fix Health Servs.*, No. 04-2712, 2007 WL 2085359, *3 (D.N.J. July 17, 2007); *see also* N.J. Ct. R. 4:4-3(a) (service via certified mail is not acceptable until the plaintiff has made a good faith attempt at personal service, or the defendant waives proper service). Notwithstanding that issue, the Court has reached the substance of Sharp's complaint and has concluded that Sharp has failed to state a claim. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir.2003) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984) (stating that cases should be "disposed of on the merits whenever practicable"). Additionally, to the extent Sharp seeks service expenses or a waiver of Rule 4's requirements, those requests are denied.

[6] Although not listing the amount-in-controversy for her legal malpractice claim, Sharp's amended complaint does not allege the existence of diversity jurisdiction under 28 U.S.C. § 1332(a). Instead, it states that this Court has supplemental jurisdiction over Sharp's state law claims under 28 U.S.C. § 1367.

Moreover, Sharp's malpractice claim involves complex state law issues regarding the professional standards of care applicable to attorneys. Therefore, pursuant to Section 1367, the Court deems it appropriate to dismiss Sharp's malpractice claim without prejudice to her right to refile the claim in state court.

The same goes for Jackson Lewis' counterclaim against Sharp for unpaid legal fees. Jackson Lewis' counterclaim turns solely on matters of state law. Not only do the state law issues predominate, they are in fact the only issues that now remain in the case. *See* U.S.C. § 1367(c). Consequently, the Court will also dismiss Jackson Lewis' counterclaim without prejudice to its right to refile the claim in state court.[7] *See, e.g., National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 389 (3d Cir. 1973); *Borenstein McConnell & Calpin, P.C., v. Bank of America Corp.*, Civ. No. 2:13-03039, 2014 WL 69951, *9-*10 (D.N.J. Jan. 8, 2014).[8] Accordingly, Sharp's motion to dismiss Jackson Lewis' counterclaim is **DENIED AS MOOT**.

## IV. CONCLUSION

For the foregoing reasons, the NCAA Defendants' motion to dismiss is **GRANTED**, the Kean Defendants' motion to dismiss is **GRANTED**. Both Sharp's claim against Jackson Lewis and Jackson Lewis' counterclaim against Sharp will be dismissed without prejudice to the right of either party to refile their claims in state court. Consequently, Sharp's motion to dismiss Jackson Lewis' counterclaim is **DENIED AS MOOT**.

                              /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 28, 2015**

---

[7] The parties appear to dispute whether Jackson Lewis' claim against sharp is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a)(1)(A). The Court need not decide that issue; but even if Jackson Lewis' counterclaim were compulsory, the Court would decline to exercise supplemental jurisdiction over it. *See, e.g., Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P.C. v. Noto*, 94 F.R.D. 184, 188 (E.D.N.Y. 1982) ("[T]he court may, in its discretion, dismiss a compulsory counterclaim after the underlying action has been dismissed for nonjurisdictional reasons." (citing *National Research Bureau, Inc.*, 482 F.2d at 389)).

[8] Even if the parties were diverse, there would be no independent basis for exercising jurisdiction over Jackson Lewis' $37,730.08 counterclaim because the claim does not exceed the $75,000 amount required for diversity actions. *See* 28 U.S.C. § 1332(a).